IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

MONICA LYNN GRAVES,

    Plaintiff,

vs.                                        No. 06-2004-Ml/V

REUBEN HODGE, et al.,

    Defendants.

---

ORDER ASSESSING $250 CIVIL FILING FEE
ORDER OF DISMISSAL
ORDER DENYING APPOINTMENT OF COUNSEL
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
NOTICE OF APPELLATE FILING FEE

---

Plaintiff Monica Lynn Graves, Tennessee Department of Correction ("TDOC") prisoner number 360330, an inmate at the Tennessee Prison for Women ("TPFW") in Nashville, Tennessee,[1] filed a pro se complaint pursuant to 42 U.S.C. § 1983 on January 4, 2006 in connection with her previous confinement at the Mark H. Luttrell Correctional Center ("MLCC") in Memphis, Tennessee. The Clerk shall record the defendants as MLCC Warden Reuben Hodge (who is identified in the complaint as "Ruben Hodge"); TDOC Commissioner George Little; and Gene Cosey, who is identified in the complaint as "IRC."

---

[1] The word "prison" is used in this order to refer to all places of confinement or incarceration, including jails, penal farms, detention and classification facilities, or halfway houses.

I.   <u>Assessment of Filing Fee</u>

Under the Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. § 1915(b), all prisoners bringing a civil action must pay the full filing fee of $250 required by 28 U.S.C. § 1914(a). The <u>in forma pauperis</u> statute, 28 U.S.C. § 1915(a), merely provides the prisoner the opportunity to make a "downpayment" of a partial filing fee and pay the remainder in installments.

In this case, plaintiff has properly completed and submitted an <u>in forma pauperis</u> affidavit and a certified copy of her trust fund account statement. Pursuant to 28 U.S.C. § 1915(b)(1), it is ORDERED that the plaintiff cooperate fully with prison officials in carrying out this order. It is further ORDERED that the trust fund officer at plaintiff's prison shall calculate a partial initial filing fee equal to twenty percent (20%) of the greater of the average balance in or deposits to the plaintiff's trust fund account for the six months immediately preceding the completion of the affidavit. When the account contains any funds, the trust fund officer shall collect them and pay them directly to the Clerk of Court. If the funds in plaintiff's account are insufficient to pay the full amount of the initial partial filing fee, the prison official is instructed to withdraw all of the funds in the plaintiff's account and forward them to the Clerk of Court. On each occasion that funds are subsequently credited to plaintiff's account the prison official shall immediately withdraw those funds and forward them to the Clerk of Court, until the initial partial filing fee is paid in full.

It is further ORDERED that after the initial partial filing fee is fully paid, the trust fund officer shall withdraw from the plaintiff's account and pay to the Clerk of this Court monthly payments equal to twenty percent (20%) of all deposits credited to plaintiff's account during the preceding month, but only when the amount in the account exceeds $10.00, until the entire $250.00 filing fee is paid.

Each time that the trust fund officer makes a payment to the Court as required by this order, he shall print a copy of the prisoner's account statement showing all activity in the account since the last payment under this order and file it with the Clerk along with the payment.

All payments and account statements shall be sent to:

> Clerk, United States District Court, Western District of Tennessee, 167 N. Main, Room 242, Memphis, TN 38103

and shall clearly identify plaintiff's name and the case number on the first page of this order.

If plaintiff is transferred to a different prison or released, she is ORDERED to notify the Court immediately of her change of address. If still confined she shall provide the officials at the new prison with a copy of this order.

If the plaintiff fails to abide by these or any other requirement of this order, the Court may impose appropriate sanctions, including a monetary fine, without any additional notice or hearing by the Court.

The Clerk shall mail a copy of this order to the prison official in charge of prison trust fund accounts at plaintiff's

prison. The Clerk is further ORDERED to forward a copy of this order to the warden of the TPFW to ensure that the custodian of the plaintiff's inmate trust account complies with that portion of the PLRA pertaining to the payment of filing fees.

The obligation to pay this filing fee shall continue despite the immediate dismissal of this case. 28 U.S.C. § 1915(e)(2). The Clerk shall not issue process or serve any papers in this case.

II.  Analysis of Plaintiff's Claims

The complaint alleges that, on June 23, 2005, plaintiff had a verbal dispute with another inmate, but was falsely accused of slapping that inmate. Defendant Cosey allegedly obtained statements from inmates who contend they saw the plaintiff hit the other inmate, but did not take statements from inmates who contend there was no physical contact. Plaintiff was allegedly placed in segregation for three days. Plaintiff also received a disciplinary write-up. The plaintiff was found guilty of assault after a disciplinary board hearing on June 27, 2005 and was sentenced to ten days in segregation, a package restriction for one year, and a five dollar ($5.00) fine. She contends there were due process violations at the disciplinary hearing. Plaintiff submitted an appeal of her disciplinary conviction to the warden on July 10, 2005, and defendant Hodge denied the appeal on July 18, 2005. Plaintiff contends she submitted an appeal to the TDOC Commissioner for Operations on July 19, 2005, but the appeal was not heard because it was deemed untimely.

After the plaintiff finished her term in segregation, she was reclassified as close security and informed that she was being transferred to the TPFW. In the meantime, the plaintiff was held in segregation and not permitted out of her cell. From July 8, 2005 until August 10, 2005, when she was transferred to the TPFW, plaintiff was denied recreation time and access to the law library. She was also not permitted to use the telephone and was escorted to meals.

The plaintiff seeks the dismissal of her disciplinary conviction and elimination of the restrictions that were imposed as a result of that conviction, reinstatement of the good time credit that was lost, removal from close security at the TPFW, placement on the May, 2006 parole docket, and monetary compensation.

The Sixth Circuit has held that 42 U.S.C. § 1997e(a) requires a district court to dismiss a complaint without prejudice whenever a prisoner brings a prison conditions claim without demonstrating that he has exhausted his administrative remedies. Brown v. Toombs, 139 F.3d 1102 (6th Cir. 1998); see Porter v. Nussle, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); Booth v. Churner, 532 U.S. 731 (2001) (prisoner seeking only money damages must exhaust administrative remedies although damages are unavailable through grievance system). This requirement places an affirmative burden on prisoners of pleading particular facts demonstrating the complete exhaustion of claims. Knuckles El v.

Toombs, 215 F.3d 640, 642 (6th Cir. 2000). To comply with the mandates of 42 U.S.C. § 1997e(a),

> a prisoner must plead [her] claims with specificity and show that they have been exhausted by attaching a copy of the applicable administrative dispositions to the complaint or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome.

Id. at 642; see also Boyd v. Corrections Corp. of Am., 380 F.3d 989, 985-96 (6th Cir. 2004) (describing the standard for demonstrating exhaustion when prison officials fail to respond in a timely manner to a grievance), cert. denied, 125 S. Ct. 1639 (2005); Baxter v. Rose, 305 F.3d 486 (6th Cir. 2002) (prisoner who fails to allege exhaustion adequately may not amend his complaint to avoid a sua sponte dismissal); Curry v. Scott, 249 F.3d 493, 503-04 (6th Cir. 2001) (no abuse of discretion for district court to dismiss for failure to exhaust when plaintiffs did not submit documents showing complete exhaustion of their claims or otherwise demonstrate exhaustion). Furthermore, § 1997(e) requires the prisoner to exhaust her administrative remedies before filing suit and, therefore, she cannot exhaust those remedies during the pendency of the action. Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999). Finally, the Sixth Circuit recently held that district courts are required to dismiss a complaint in its entirety, pursuant to 42 U.S.C. § 1997e(a), that contains any unexhausted claims. Jones Bey v. Johnson, 407 F.3d 801, 805-09 (6th Cir. 2005).

In this case, the plaintiff has not satisfied her burden of demonstrating, through particularized averments, that she has exhausted the administrative remedies for her claims. The

6

plaintiff's appeal of her disciplinary conviction was denied as untimely, although the plaintiff asserts that she timely delivered the appropriate documents to prison authorities. The Court will assume, for purposes of this order, that the plaintiff has adequately attempted to exhaust her administrative remedies on her disciplinary conviction. Thomas v. Woolum, 337 F.3d 720, 733 (6th Cir. 2003) (an inmate's failure to comply with the prison's time limits for filing grievances did not mean that he had failed to comply with § 1997e(a)).

The plaintiff has not demonstrated that she exhausted her claims concerning the change in her custody level after the disciplinary conviction and her treatment during her remaining time at the MLCC. No copies of grievances, or responses to grievances, concerning these matters are attached to the complaint. Although the plaintiff alleges that she submitted inmate request forms, one of which is attached to the complaint, that is not the functional equivalent of a formal inmate grievance.[2] Moreover, although the complaint asserts that the plaintiff attempted to file a grievance

---

[2] Although the complaint asserts that the plaintiff sent inmate request forms to various prison officials, including defendant Hodge, and spoke, or attempted to speak, informally with others, the Sixth Circuit has repeatedly held that an inmate must strictly follow the prison grievance procedures. Shephard v. Wilkinson, 27 Fed. Appx. 526, 527 (6th Cir. Dec. 5, 2001) ("While Shephard asserts that he has raised his complaints in numerous letters to prison and public officials, a prisoner must utilize the formal grievance process provided by the state; he cannot comply with the requirements of § 1997e(a) by informally presenting his claims."); Hewell v. Leroux, 20 Fed. Appx. 375, 377 (6th Cir. Sept. 21, 2001) (same); see also Clark v. Beebe, No. 98-1430, 1999 WL 993979, at *2 (6th Cir. Oct. 21, 1999) (district court erred in holding that prisoner had substantially complied with exhaustion requirement by writing a letter to the U.S. Attorney's office that eventually made its way to the warden of plaintiff's prison). Letters and informal conversations are not, therefore, a substitute for a formal inmate grievance.

on August 7, 2005, which was not accepted by the grievance clerk because of her impending transfer, the complaint does not allege with specificity the substance of the grievance or that it named defendants Hodge and Little, as required by Moorer v. Price, 83 Fed. Appx. 770, 772 (6th Cir. Dec. 9, 2003) (plaintiff did not exhaust claim against warden because his grievance did not identify the warden or articulate any claim against her); Thomas, 337 F.3d at 733-34; and Curry, 249 F.3d at 504.

The Sixth Circuit has stated that "[a] plaintiff who fails to allege exhaustion of administrative remedies through 'particularized averments' does not state a claim on which relief may be granted, and his complaint must be dismissed sua sponte." Baxter, 305 F.3d at 489. Moreover, pursuant to the recent decision in Jones Bey, a district court must dismiss any complaint that contains unexhausted claims rather than attempting to sever the exhausted claims. Accordingly, the complaint is subject to dismissal in its entirety, without prejudice, pursuant to 42 U.S.C. § 1997e(a).[3]

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

    (1)  is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

    (2)  seeks monetary relief from a defendant who is immune from such relief.

---

    [3]  As the Sixth Circuit has explained, "If the plaintiff has exhausted his administrative remedies, he may always refile his complaint and plead exhaustion with sufficient detail to meet our heightened pleading requirement, assuming that the relevant statute of limitations has not run." Baxter, 305 F.3d at 489.

8

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B). Plaintiff's complaint is subject to dismissal in its entirety.

As a preliminary matter, this Court is not the proper venue for any claim concerning the plaintiff's security classification and housing placement at the TPFW, which is located in the Nashville Division of the Middle District of Tennessee, see 28 U.S.C. § 1391(b), and none of the defendants in this case is responsible for those decisions at the TPFW. If plaintiff seeks to assert a claim concerning her treatment at the TPFW, she must file it in the Nashville Division of the United States District Court for the Middle District of Tennessee after exhausting her administrative remedies.

Second, the complaint contains no factual allegations concerning defendants Hodge and Little. When a plaintiff completely fails to allege any action by a defendant, it necessarily "appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985).[4]

Third, the complaint does not allege that defendant Hodge had any personal involvement in the change in the plaintiff's security classification and in the various other actions that were taken after she served her time in segregation for the disciplinary conviction. The complaint also does not allege that defendant Little had any involvement whatsoever in any aspect of this

---

[4] Defendant Hodge apparently signed the denial of the plaintiff's disciplinary conviction. Defendant Little does not appear to have had any involvement in that appeal.

complaint. There is no respondeat superior liability under § 1983. Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Instead,

> [t]here must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

Id. (citation omitted). A supervisory official who is aware of the unconstitutional conduct of his subordinates yet fails to act generally cannot be held liable in his individual capacity. Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999); Lillard v. Shelby County Bd. of Educ., 76 F.3d 716, 727-28 (6th Cir. 1996). In this case, the complaint is devoid of allegations that defendants Little and Hodge "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates," Bellamy, 729 F.2d at 421, or that the allegedly unconstitutional conduct described in the complaint was the direct result of the failure of Little or Hodge to perform a function he was legally obligated to perform, Doe v. Claiborne County, Tennessee, 103 F.3d 495, 511-12 (6th Cir. 1996). Apart from defendant Hodge's involvement in the disciplinary conviction, it is apparent that Little and Hodge are named in the complaint because of their positions as TDOC Commissioner and Warden of the MLCC, respectively. Defendants Little and Hodge are not alleged to have had any direct, personal involvement in the events at issue in this action, and they cannot be held liable under § 1983.

As for plaintiff's claims arising from the alleged due process violations at her disciplinary hearing, the plaintiff's disciplinary conviction did not result in the loss of sentence credits or otherwise directly affect the length of her sentence. Therefore, the plaintiff does not have a valid due process claim because the restrictions imposed do not constitute a significant or atypical hardship. As the Supreme Court explained in rejecting a due process challenge to a prison disciplinary conviction:

> Conner asserts, incorrectly, that any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause even in the absence of any state regulation. . . .
>
> . . . .
>
> . . . We hold that Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.

Sandin v. Conner, 515 U.S. 472, 484, 486 (1995). Thus, an inmate generally cannot maintain a due process claim based on her confinement in segregation, particularly where, as here, she apparently suffered no loss of good-time credit. See Harbin-Bey v. Rutter, 420 F.3d 571, 576-77 (6th Cir. 2005) (designation as member of a security threat group and permanent restrictions imposed as a result of that designation not an atypical and significant hardship in relation to the ordinary incidents of prison life); Sarmiento v. Hemingway, 93 Fed. Appx. 65, 66 (6th Cir. Mar. 15, 2004) ("Generally, unless placement in disciplinary confinement is accompanied by a withdrawal of good time credits or is for a significant period of time that presents an unusual hardship on the

inmate, no interest to remain free of disciplinary confinement will be found in the case."); Utley v. Campbell, 84 Fed. Appx. 627, 629 (6th Cir. Dec. 15, 2003) ("In order to state a claim of a denial of due process during a disciplinary hearing, Utley was required, and failed, to show that he had been subjected to an atypical and significant hardship."); Williams v. Wilkinson, 51 Fed. Appx. 553, 556-57 (6th Cir. Nov. 15, 2002); see also Jones v. Baker, 155 F.3d 810 (6th Cir. 1998) (administrative segregation); Mackey v. Dyke, 111 F.3d 460 (6th Cir. 1997); Bruggeman v. Paxton, No. 00-3917, 2001 WL 861678, at *1 (6th Cir. June 30, 2001). Nothing in the complaint provides any basis for a conclusion that the conditions the plaintiff encountered in segregation or, subsequently, in close custody "impose[] atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Conner, 515 U.S. at 484; see also id. at 487.

Even if that were not the case, due process requires only that some evidence be introduced in support of the decision of a disciplinary board. Superintendent, Massachusetts Correctional Instit., Walpole v. Hill, 472 U.S. 445, 455-57 (1985); Humphreys v. Hemingway, 77 Fed. Appx. 788 (6th Cir. Sept. 15, 2003). As the decision of the disciplinary board was supported by the testimony of defendant Cosey, the requirements of due process were satisfied.

For the same reason, the plaintiff also has no claim based on her subsequent reclassification and transfer to the TPFW. In general, an inmate does not have a liberty interest in a particular security classification or in freedom from segregation.

Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Montanye v. Haymes, 427 U.S. 236, 243 (1976); Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976); Newell v. Brown, 981 F.2d 880, 883 (6th Cir. 1992); Beard v. Livesay, 798 F.2d 874, 876 (6th Cir. 1986). Likewise, the complaint contains no allegations that the conditions experienced by plaintiff due to her close custody status constitute an atypical and significant hardship.[5] Moreover, TDOC policy provides for review of an inmate's placement in administrative segregation every thirty days, and the inmate generally has a right to be present at those hearings. TDOC, Administrative Policies and Procedures, Index No. 404.10, ¶ VI(B) (Jan. 15, 2004).

Accordingly, the Court DISMISSES the complaint in its entirety, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim on which relief may be granted.

III. Appeals Issues

The next issue to be addressed is whether plaintiff should be allowed to appeal this decision in forma pauperis. Twenty-eight U.S.C. § 1915(a)(3) provides that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.

---

[5] The complaint appears to allege that the plaintiff subsequently lost the opportunity to earn future sentence credit due to her placement in close custody. However, that loss of a future opportunity, and any effect the plaintiff's disciplinary infraction had on her parole eligibility, is a collateral consequence that does not create a protected liberty interest. See Williams v. Vidor, 67 Fed. Appx. 857, 859 (6th Cir. May 8, 2003); see also Sandin, 515 U.S. at 487.

13

The good faith standard is an objective one. <u>Coppedge v. United States</u>, 369 U.S. 438, 445 (1962). An appeal is not taken in good faith if the issue presented is frivolous. <u>Id.</u> The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith.

It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by plaintiff is not taken in good faith and she may not proceed on appeal <u>in forma pauperis</u>.

The final matter to be addressed is the assessment of a filing fee if plaintiff appeals the dismissal of this case.[6] In <u>McGore v. Wrigglesworth</u>, 114 F.3d 601, 610-11 (6th Cir. 1997), the Sixth Circuit set out specific procedures for implementing the PLRA. Therefore, the plaintiff is instructed that if she wishes to take advantage of the installment procedures for paying the appellate filing fee, she must comply with the procedures set out in <u>McGore</u> and § 1915(b).

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by this plaintiff, this is the first dismissal in this

---

[6] Effective November 1, 2003, the fee for docketing an appeal is $250. <u>See</u> Judicial Conference Schedule of Fees, ¶ 1, Note following 28 U.S.C. § 1913. Under 28 U.S.C. § 1917, a district court also charges a $5 fee:

> Upon the filing of any separate or joint notice of appeal or application for appeal or upon the receipt of any order allowing, or notice of the allowance of, an appeal or of a writ of certiorari $5 shall be paid to the clerk of the district court, by the appellant or petitioner.

14

district of one of her cases for failure to state a claim or as frivolous.

       IT IS SO ORDERED this 27th day of February, 2006.


                                         /s/ Jon P. McCalla
                                         JON PHIPPS McCALLA
                                         UNITED STATES DISTRICT JUDGE